IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 31, 2021 Session

**STATE OF TENNESSEE v. AMANDA DAWN FREEMAN**

**Appeal from the Circuit Court for Sevier County**
**Nos. 24476-III, 25402-III, 25470-III, 25471-III     Rex Henry Ogle, Judge**

**No. E2020-00983-CCA-R3-CD**

The Defendant, Amanda Dawn Freeman, appeals from the Sevier County Circuit Court's revocation of probation for her aggravated burglary, theft, and drug-related convictions, for which she received an effective five-year sentence on probation. The Defendant contends that the trial court erred by revoking her probation and ordering her to serve the remainder of her sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Edward Cantrell Miller, District Public Defender; and Brian D. Wilson (on appeal), Assistant District Public Defender – Appellate Division; and Shannon J. Holt (at revocation hearing), Assistant District Public Defender, for the appellant, Amanda Dawn Freeman.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Barry Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

According to the judgments of conviction, on March 19, 2019, the Defendant pleaded guilty in case number 24476-III to aggravated burglary and to theft of property valued at more than $1000. The Defendant likewise pleaded guilty in case number 25402-III to misdemeanor theft, in case number 24570-III to misdemeanor drug possession and possession of drug paraphernalia, and in case number 25471-III to possession of drug

paraphernalia.[1]  The trial court imposed an effective five-year sentence, suspended to probation after serving 180 days.  The Defendant was required to undergo an alcohol and drug assessment and to follow any recommendations resulting from the assessment.  Further, the court ordered the Defendant to obtain inpatient treatment, to obtain a mental health evaluation, and to live in a "sober living community."

On April 15, 2019, a probation violation report was filed with the trial court and alleged that the Defendant had failed to provide her probation officer with a home address, failed to report for her initial intake interview after her release from jail, failed to make herself available for searches and drug screens, failed to enroll/attend inpatient treatment as recommended by the alcohol and drug assessment, and failed to submit a DNA sample.  The report alleged that the Defendant had not contacted her probation officer since her release from jail and that Helen Ross McNabb Center personnel last had contact with the Defendant on April 2, 2019.  The report reflected that the probation officer spoke with the Defendant's mother, who advised that the Defendant might have been in the hospital.  The probation officer was unable to confirm whether the Defendant had been admitted to a hospital.  The report reflected that the Defendant was to enroll in CCS but that the probation officer was advised the Defendant never entered the program.  The report reflected that the Defendant's whereabouts were unknown and that the officer considered her to have absconded from supervision.  An arrest warrant issued on April 15, 2019.  On July 29, 2019, the court determined that the Defendant had violated the terms of her release as alleged in the probation violation report, ordered her to serve 180 days in confinement, and returned her to probation.  The court, likewise, ordered the Defendant to complete an alcohol and drug assessment and to follow any recommendations.

On September 17, 2019, a second probation violation report was filed with the trial court.  The report alleged that on May 28, 2019, the Defendant had been arrested for identity theft and that on June 25, 2019, she pleaded guilty to criminal impersonation.  She received a six-month sentence suspended to probation.  The affidavit of complaint related to the new conviction stated that the Defendant had fled from a police officer and later provided the officer with a false name and birthdate.  The report stated that the probation officer was unaware of the arrest and conviction before the resolution of the first probation violation in this case.  An arrest warrant issued on September 17, 2019.  On October 29, 2019, the court entered an order, which reflected that the parties agreed to "merge" the violation with the original probation violation.  The court sentenced the Defendant to time served.

---

[1] Although the plea agreement documents and the trial court's order entered after the guilty plea hearing state that the Defendant's theft-related conviction would be theft valued at more than $2500, the judgment forms reflect that she pleaded guilty to misdemeanor theft and to theft of property valued at more than $1000.

On November 19, 2019, another probation violation report was filed with the trial court. The report alleged that the Defendant tested positive for methamphetamine on October 30, 2019, and that the Defendant admitted using methamphetamine. The report reflected that the Defendant was released from confinement on October 28, approximately, in connection with the previous probation violation. The report, likewise, alleged that the Defendant had behaved in a manner which posed a threat to others and to herself based upon her drug use. An arrest warrant issued on November 19, 2019, and in a January 13, 2020 order, the court determined that the Defendant violated the conditions of her release as stated in the probation violation report, sentenced her to time served, and returned her to probation. The record reflects that the Defendant remained in confinement until a "bed [became] available, transitional living."

On March 12, 2020, another probation violation report was filed with the trial court. The report alleged that on January 16, 2020, the Defendant entered Never Alone Recovery and that on February 27, 2020, the Defendant tested positive for amphetamine, methamphetamine, and ecstasy. The report stated that the Defendant admitted the drug use. The report, likewise, alleged that she failed to complete transitional living after she was discharged from Never Alone Recovery as a result of her failed drug screen. The report stated that this was the Defendant's second failed drug screen while enrolled in the program.

The January 16, 2020 admittance form from Never Alone Recovery was attached to the probation violation report and reflected that the Defendant committed to a six-month program. A drug screen report was likewise attached to the probation violation report and showed that on February 27, 2020, the Defendant tested positive for amphetamine, methamphetamine, and ecstasy and that she signed the report, affirming she agreed with the results and did not wish for further analysis. Finally, a February 27, 2020 Never Alone Recovery discharge form was attached to the probation violation report and reflected that the Defendant had been discharged from the program because she failed a second drug screen. An arrest warrant issued on March 12, 2020.

At the June 23, 2020 revocation hearing, defense counsel told the trial court that the Defendant was going to enter "an open plea" to the violation.

Probation Officer Robert McGill testified that the Defendant's present violation was the third for a five-year sentence. Mr. McGill stated that the Defendant was on the trial court's "TN-ROCS review docket," that on January 16, 2020, the Defendant entered Never Alone Recovery, and that she tested positive for illegal substances on February 27, 2020. Mr. McGill stated that the Defendant was discharged from the program after the failed drug screen, that she admitted using methamphetamine, amphetamine, and ecstasy, and that, as a result, she failed to complete transitional living, which had been ordered by the court.

On cross-examination, Mr. McGill testified that the Defendant did not complete a substance abuse rehabilitation program before entering Never Alone Recovery, which he described as a halfway house. He said that she was released from confinement on January 13 and entered Never Alone Recovery on January 16.

Upon questioning by the trial court, Mr. McGill reviewed the Defendant's supervision history, including the Defendant's failing to enroll and to attend inpatient treatment as recommended by Helen Ross McNabb Center.

The trial court permitted the Defendant to make a statement. The Defendant stated that she wanted the opportunity to "go to rehab first." The court interjected and asked the Defendant how many opportunities she had been given to go to "rehab." The Defendant said, "Just the one, Your Honor." Defense counsel noted for the court that after the previous revocation hearing, the Defendant went immediately from the jail to a halfway house and that the Defendant had not completed a substance abuse rehabilitation program. Counsel agreed drug use was the cause of the Defendant's issues but stated that the Defendant had passed her drug screens between January 16 and February 27. Counsel requested that the Defendant be provided an opportunity to complete a substance abuse rehabilitation program before entering transitional living.

On redirect examination, Mr. McGill testified that the Defendant failed drug screens when she "was in that rehab program." He said that she was discharged from the program because she failed a second drug screen.

The trial court expressed its frustration that the Defendant had violated the conditions of her release three times. The court found that she continued failing drug screens. The court stated that although she went to "rehab," she "flunked out." The court found that "nothing had worked" for the Defendant. The court stated, "We've tried rehab. We've tried jail time. That's not worked. You've had sentences to serve, and those have not worked. As I say, you've had rehab. You continue to use drugs. Nothing we do works."

The trial court determined that the Defendant had willfully violated the terms of her release by her continued drug use. The court stated the Defendant had been "kicked out of drug rehab and so forth" and ordered the Defendant to serve her sentence in confinement. Defense counsel told the court that the Defendant had been discharged from a halfway house and had not attended a substance abuse rehabilitation program. The court responded that the Defendant had "still flunked out."

Following the revocation hearing, the trial court entered a written order. The court determined that the Defendant had violated the conditions of her release as alleged in the probation violation report. The court ordered her to serve the balance of her sentence in confinement. This appeal followed.

The Defendant contends that the trial court erred by ordering the Defendant to serve her sentence in confinement. She argues that the court relied on the "clearly erroneous claim" that she "flunked out of a rehabilitation program." The State responds that the trial court did not abuse its discretion by ordering the Defendant to serve her sentence.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2019). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id*. §§ 40-35-308(a), (c), -310 (2019). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant admitted to the allegations contained in the probation violation report and warrant. The Defendant entered "an open plea" to the allegations contained in the probation violation report, and she concedes on appeal that she violated the terms of her release by her continued drug use. The record reflects that while at Never Alone Recovery, a halfway house, the Defendant failed two drug screens. In February 2020, approximately one and one-half months into her six-month program at the halfway house, the Defendant tested positive for and admitted using amphetamine, methamphetamine, and ecstasy. The Defendant, likewise, failed a drug screen on October 20, 2019, at which time she admitted using methamphetamine. As a result, the record supports the trial court's finding that the Defendant violated the conditions of her probation by her continued drug use. The court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve her sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310.

We have considered the Defendant's argument that the trial court erroneously determined that she had attended but failed to complete an inpatient substance abuse rehabilitation program and that she had only entered, and was later discharged, from a halfway house. However, the record reflects that the trial court acknowledged the Defendant had been discharged from a halfway house program, which she concedes and

which is supported by the record. Counsel told the court that the Defendant had been discharged from a halfway house and had not attended a drug rehabilitation program, and the court responded that the Defendant had "still flunked out," referring to her discharge from the halfway house. As a result, the record does not reflect that the court relied upon "flawed" evidence in making its determinations.

In any event, the record reflects that the court ordered the Defendant to serve her sentence based upon her continued drug use, which included three failed drug screens in less than one year. The Defendant violated the conditions of her probation multiple times, and the trial court did not abuse its discretion by ordering her to serve the remainder of her sentence in confinement. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE